*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
February 12, 2019

v

No. 339281
Oakland Circuit Court
LC No. 2016-260695-FH

STEVEN HENRY ERQUHART,

Defendant-Appellant.

Before: GLEICHER, P.J., and STEPHENS and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions for aggravated stalking, MCL 750.411i, and assault and battery, MCL 750.81. We affirm.

This case arises out of a series of incidents involving defendant, his ex-girlfriend Mary Beth Hughey, and her close friend Warren Michael Williams. In May 2014, defendant followed Hughey and Williams out of a strip mall parking lot and purposely rear-ended Williams's car at a high rate of speed. Later, in February 2015, defendant accosted Williams as he was walking out of a building where Hughey worked. Williams tried to run away, but defendant chased him, tackled him, slammed his face into the ground, and began kicking Williams's head and ribs. Williams sustained injuries, and in March 2015, Williams obtained a personal protection order (PPO) against defendant.

One day in March 2016, Hughey began receiving incessant calls, text messages, and voicemails from defendant. Eventually, Hughey texted defendant and asked him to leave her alone. That same day, Hughey and Williams were standing in the parking lot of Hughey's apartment and saw defendant in a car nearby. Williams's PPO against defendant was still active. Defendant stepped out of the car holding a handgun and threatening to "F [sic] [them] up," so Williams and Hughey ran toward Hughey's apartment complex, which had an exterior stairwell. Williams and Hughey managed to barricade themselves in Hughey's third-floor apartment. Defendant attempted to kick-down the door and failed. Williams and Hughey called 911, but before police arrived, defendant fled. Defendant later called police and told them "that he wasn't involved in anything" that had taken place at Hughey's apartment, and "that the female part of

the residence had called him to say she had called the Novi Police Department to get him in trouble." Police later arrested defendant.

## I. PROSECUTORIAL MISCONDUCT

Defendant argues that, at trial, the prosecutor committed prosecutorial misconduct by (1) eliciting testimony from Officer Timothy Farrell about his opinion on defendant's guilt and the credibility of the victims, (2) encouraging the jury to believe the officers of the Novi Police Department during closing argument, and (3) informing the jury that a judge had previously found defendant guilty of harassing Williams. We disagree.

Generally, "[i]ssues of prosecutorial misconduct are reviewed de novo to determine whether the defendant was denied a fair and impartial trial." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). However, defendant failed to properly preserve this issue for appeal by making a contemporaneous objection to the prosecutor's disputed remarks, raising the issue of prosecutorial misconduct, and requesting a curative instruction. See *id*. Thus, this Court's review is for plain error affecting substantial rights. *People v Perry*, 317 Mich App 589, 600; 895 NW2d 216 (2016). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of "prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. Reversal is warranted where the plain error leads to "the conviction of an actually innocent defendant," or where an error affects the "fairness, integrity, or public reputation" of the proceeding. *Id*. at 763-764.

"[T]he test of prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). A defendant's right to a fair trial "can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence." *Id*. at 63-64. "To determine if a prosecutor's comments were improper, we evaluate the prosecutor's remarks in context, in light of defense counsel's arguments and the relationship of these comments to the admitted evidence." *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009).

Defendant first contends that the prosecutor engaged in prosecutorial misconduct while questioning Officer Farrell, who responded to the 911 calls made after defendant chased Williams and Hughey into Hughey's apartment building. Defendant alleges that the prosecutor improperly asked Officer Farrell his opinion on defendant's guilt. The testimony in question is as follows:

> *Q*. [Y]ou believed that—after Novi Police Department's investigation you believed a crime had occurred?
>
> *A*. Yes.
>
> *Q*. Okay. You believed the [person] responsible for that was who? The person responsible for the crime?

*A*. [Defendant], per the witnesses.

Although "[a] witness may not opine about the defendant's guilt or innocence in a criminal case," *People v Heft*, 299 Mich App 69, 81; 829 NW2d 266 (2012), MRE 701 allows any witness, including police witnesses, to testify "in the form of opinions or inferences" that are "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Thus, under MRE 701, police officers may present testimony about "the steps of their investigations from their personal perceptions." *Heft*, 299 Mich App at 83.

Leading up to the prosecutor's contested questions, the prosecutor asked Officer Farrell to detail all the steps of his investigation up to that point. The prosecutor then asked Officer Farrell not about his opinion on defendant's guilt but about his opinion on the results of his investigation, i.e., whether a crime occurred and, if so, who the evidence suggested perpetrated the crime. In response to those questions, Officer Farrell testified that his investigation suggested that a crime occurred and gave the potential identity of the culprit, "per the witnesses." Officer Farrell was thus explaining the steps of his investigation, and, under MRE 701, his testimony was permissible. See *Heft*, 299 Mich App at 83.

We also note that the prosecutor's questions and Officer Farrell's testimony were in direct response to defendant's theory of the case. In his opening, defendant emphasized that the police officer's investigation did not find evidence to support that a crime was committed. In response, the prosecutor questioned the investigating officer—Officer Farrell—about the details of his investigation and whether the evidence from that investigation supported that a crime was committed. Because the prosecutor's questions were in direct response to defendant's arguments, it does not amount to prosecutorial misconduct. See *Seals*, 285 Mich App at 22.

On appeal, defendant attempts to argue that the prosecutor's questions were not in response to defendant's theory of the case. In so doing, defendant attempts to distinguish the investigation from Officer Farrell, explaining that defendant's arguments were about the investigation and not "the opinions or judgments of any person" (emphasis omitted). Yet Officer Farrell was the investigating officer, and there would be no investigation without the investigating officer. An investigation is not limited to physical evidence, as defendant seems to suggest, but also includes the investigating officer's inferences drawn from that evidence and the officer's experience, as well as the officer's interviews of the witnesses. Thus, defendant's attempted distinction between the investigation and the investigating officer's testimony is artificial and unconvincing.[1]

Defendant also contends that this line of questioning and Officer Farrell's responses amounted to improper witness vouching. "It is generally improper for a witness to comment or provide an opinion on the credibility of another witness, because credibility matters are to be

---

[1] Defendant also contends that Officer Farrell's opinion-of-guilt testimony violated defendant's due process rights. For reasons already explained, Officer Farrell did not opine on defendant's guilt or innocence, so defendant is not entitled to relief on his claimed due-process violation.

determined by the jury." *Dobek*, 274 Mich App at 71. In context, Officer Farrell was not commenting on the credibility of Williams or Hughey, but, as already explained, on the results of his investigation: that a crime was committed, and that the evidence suggested that the identity of the culprit was defendant. Officer Farrell did not testify, either explicitly or implicitly, that Williams's or Hughey's testimonies were true or worthy of belief.

Defendant also quotes a portion of the prosecutor's questioning of Officer Farrell where the prosecutor asked "if you didn't believe a victim or if you didn't believe that what they were saying or telling the police, it's not like you would request charges if they were incredible," and asserts that this, too, amounted to eliciting improper witness vouching. Defendant does not quote the rest of the prosecutor's question, in which she asked Officer Farrell if he would "request charges" if he "didn't believe a situation happened?" Officer Farrell responded to the prosecutor's questions by saying that she was "[c]orrect," but explaining that he does not request charges; all he does is "forward the reports," and it was not his "job to decide . . . what . . . to charge [people] with." We cannot agree that this is equivalent to vouching for the witnesses. The prosecutor appeared to be asking if Officer Farrell would put a witness's outrageous statement into his reports, and Officer Farrell responded that he would not, but explained that it was ultimately not his job to decide what was true or not, and he simply forwarded his reports and let others make the charging decisions.

With respect to all of defendant's claimed errors related to Officer Farrell allegedly vouching for the victims' testimonies, we would conclude that, even if his testimony was improper, it did not prejudice defendant. See *Carines*, 460 Mich at 763. As this Court commented in *Dobek*, 274 Mich App at 71, "[g]iven that [the investigating officer] was called as a witness by the prosecutor and that a criminal prosecution against [the] defendant was pursued, the jurors surely understood that [the investigating officer] believed that the victim was telling the truth even without the disputed testimony." Any juror here would have understood, from the simple fact that the case was being tried, that Officer Farrell believed that there was merit to the victims' testimonies, and so defendant cannot establish prejudice.

Defendant next argues that the prosecutor committed prosecutorial misconduct and denied him his right to due process by encouraging the jury to "believe the Novi Police Department." The full paragraph of the prosecutor's closing argument states as follows:

> The Novi Police Department. I'm glad [defense] counsel tells you to keep believing them, that they're the best police officers. I would agree. And in fact, they submitted this case for a warrant from our office. They believed the defendant was culpable for what happened that day. They submitted that warrant to our office. So yes, please, please believe the Novi Police Department.

Defendant contends that the prosecutor improperly vouched for the credibility of the officers of the Novi Police Department during closing argument. A prosecutor may not "vouch for the credibility of his witnesses to the effect that he has some special knowledge concerning a witness' truthfulness." *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995). However, as previously noted, when analyzing whether prosecutorial misconduct occurred, this Court "must examine the entire record and evaluate a prosecutor's remarks in context." *Dobek*, 274 Mich App at 64.

The prosecutor made the statement at issue during the rebuttal to defense counsel's closing argument, wherein defense counsel, while arguing that Williams and Hughey fabricated the allegations against defendant, stated:

It makes sense why the police would do an investigation and not find anything. . . . [I]f [Williams and Hughey] aren't telling the truth[,Officer Farrell] wouldn't find any witnesses, any gun, any evidence, any damage to the door.

* * *

We don't have some one horse town police officer. I mean, we literally have—if Novi isn't the best police department in Michigan, it's one of the top three. I mean, if you graduate from the academy, you want to be in West Bloomfield, Bloomfield, you want to be [in] Novi.

* * *

So like I said in the beginning, I'm asking you to believe the police investigation, not the two people you don't know [Williams and Hughey].

Remarks that may be improper in some contexts can be deemed permissible if the prosecutor is responding to an argument made by defense counsel. *Dobek*, 274 Mich App at 64. The prosecutor's remarks here were made in response to defense counsel's assertion that the jury should believe Officer Farrell's testimony, because Officer Farrell testified that he did not find a gun or any direct evidence that would have solidified defendant's link to the alleged crime. The prosecutor was explicitly responding to portions of defense counsel's closing argument. Indeed, the prosecutor's contested statements were less a response to defense counsel's argument and more a reiteration of that argument; the prosecutor asked jurors to do what defense counsel said and believe the results of the Novi Police Department's investigation. The prosecution and defense counsel simply had different interpretations of what the police department's investigation implied. According to defense counsel, the lack of evidence corroborating Williams's and Hughey's statements implied that those statements were fabricated, whereas the prosecution contended that the department's investigation tended to show that there was a crime and that defendant was the culprit. The prosecution did not imply that she had some special knowledge about a witness's credibility, see *Bahoda*, 448 Mich at 276, but was instead permissibly responding to defense counsel's argument, see *Dobek*, 274 Mich App at 64. Thus, the prosecutor did not commit prosecutorial misconduct.[2]

---

[2] Defendant references the prosecutor's statement to "believe the Novi Police Department" in arguing that his due process rights were violated. Defendant does not claim that this statement independently violated his due process rights, but rather "compounded [the] error" of Officer Farrell's opinion-of-guilt testimony. Again, because Officer Farrell did not testify about his opinion on defendant's guilt, defendant's claimed due-process violation does not entitle him to relief.

Finally, defendant argues that the prosecutor engaged in prosecutorial misconduct by impermissibly shifting the burden of proof when, during closing argument, the prosecutor told the jury that a judge had already made a determination regarding the elements of aggravated stalking under MCL 750.411i. The prosecutor's contested argument was as follows:

> [F]irst of all, I do want to talk about the PPO, because that was filed with the court. Not anybody can get a PPO. You have to show prior allegations, prior incidences. It has to go before a judge and the judge signed off on that PPO. And if you look at that PPO, it's a valid PPO.
>
> That's telling right there. So not only did he have a PPO, but he had a court say, yeah, you know what? This guy's harassed you so much that we think that you need a PPO to personally protect you so that he's not around you.

Defendant argues that to prove that defendant committed the crime of aggravated stalking, the prosecutor was required to show that defendant engaged in "repeated or continuous harassment" of Williams. MCL 750.411i(1)(d). Thus, according to defendant, the prosecutor was required to prove that defendant chased Williams and Hughey through Hughey's apartment complex in March 2016, and that he ran into Williams's car in May 2014 and assaulted him in a parking lot in February 2015.

In support of his argument, defendant cites to *People v Hudson*, 123 Mich App 624; 333 NW2d 12 (1982). In *Hudson*, the trial court gave the jury instructions on the difference between probable cause and proof beyond a reasonable doubt, and erroneously informed the jury that "there was probable cause to believe that the defendant had committed the offense." *Id*. at 625. This Court found that a defendant was entitled to a new trial because the jury instructions were "likely to place the burden of proof on the defendant to prove his innocence." *Id*. This Court ultimately held that "[t]he burden of proof in a criminal case may not be placed on the defendant and instructions of the trial judge susceptible of any such interpretation are erroneous." *Id*.

The caselaw cited by defendant is distinguishable and does not properly support his argument. *Hudson* pertains to jury instructions given by a trial court, wherein the *court* explicitly stated that there was probable cause to find the defendant guilty. See *People v Reed*, 393 Mich 342, 351; 224 NW2d 867 (1975) (explaining that it is reversible error for a court to invade the province of the jury by instructing "that an essential element of a criminal offense exists, as a matter of law"). Conversely, here, the *prosecutor* made the contested statement. And, importantly, the PPO was entered into evidence, and it suggested what the prosecutor argued: that a judge determined that defendant previously engaged in acts harassing Williams. A prosecutor is free to argue the evidence and all reasonable inferences arising from it. *Bahoda*, 448 Mich at 282. The trial court also instructed jurors that the prosecutors' arguments were not evidence, and jurors are presumed to follow their instructions. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). "No error requiring reversal will be found if the prejudicial effect of the prosecutor's comments could have been cured by a timely instruction." *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001). Thus, we cannot conclude that the prosecution's argument impermissibly shifted the burden to defendant. Rather, the prosecution made permissible arguments based on the evidence, and the trial court properly instructed jurors

to not accept any of the prosecutor's arguments as evidence. Defendant is not entitled to relief on this claim of prosecutorial misconduct.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he was denied the effective assistance of counsel because counsel failed to object to the admission of an addendum to the PPO, failed to argue that defendant had no actual notice of the PPO, and failed to object to the instances of prosecutorial misconduct already discussed. We disagree.

"Whether the defendant received the effective assistance of counsel guaranteed him under the United States and Michigan Constitutions is a mixed question of fact and law." *People v Ackley*, 497 Mich 381, 388; 870 NW2d 858 (2015). When examining a defendant's claim of ineffective assistance of counsel, "this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Dixon-Bey*, 321 Mich App 490, 515; 909 NW2d 458 (2017). However, because defendant failed to file a motion for a *Ginther*[3] hearing or a new trial on this ground, this Court's review is "limited to mistakes apparent on the record." *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

"In order to obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Effective assistance is "strongly presumed," *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012), and the defendant bears the burden of proving otherwise, *People v Hampton*, 176 Mich App 383, 385; 439 NW2d 365 (1989). Counsel's performance cannot be judged with the "benefit of hindsight." *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008).

Trial counsel has wide discretion regarding trial strategy "because counsel may be required to take calculated risks to win a case." *Heft*, 299 Mich App at 83. A court cannot substitute its judgment for that of trial counsel concerning matters of trial strategy. *Payne*, 285 Mich App at 190. There is a strong presumption that trial counsel's performance was strategic, *Unger*, 278 Mich App at 242, and defendant bears the burden of overcoming this presumption, *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). The fact that a trial strategy fails does not mean that its use constitutes ineffective assistance of counsel. *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008). But the strategy must, in fact, be sound; a court must not insulate the review of counsel's performance by calling it trial strategy. *People v Douglas*, 496 Mich 557, 585; 852 NW2d 587 (2014).

Defendant first argues that defense counsel was ineffective for failing to object to the admission of an addendum to the PPO because it contained evidence that was prejudicial to defendant. The evidence in the addendum that was prejudicial to defendant related to statements Williams made in the addendum alleging various acts of harassment against Williams by

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

defendant, describing defendant as "dangerous," and alleging that there were warrants out for defendant's arrest in Wayne County.

Assuming that it was objectively unreasonable for defense counsel not to move to exclude the addendum, defendant cannot establish prejudice. Williams testified about many of the incidents in the addendum, and that testimony was corroborated by Hughey. Those incidents went back to 2014 and led to Williams getting a PPO against defendant. Defendant does not contest that the PPO itself was properly admitted. Williams and Hughey also both testified about the events in March 2016 where defendant tried to kick down Hughey's front door after confronting Hughey and Williams in Hughey's apartment building's parking lot. Officer Farrell testified that he responded to the Hughey's apartment building after Williams and Hughey placed 911 calls, and he photographed a footprint on Hughey's steel apartment door. Officer Farrell noticed that both Hughey and Williams were "very upset" and "[s]eemed to be frightened." When Officer Farrell went back to the police station, he received a call from defendant saying "that he [defendant] wasn't involved in anything" that had taken place at Hughey's apartment. Defendant's phone records show that he incessantly contacted Hughey on the day of the attack, attempting to contact her over 100 times beginning at 7:30 a.m. In light of the overwhelming evidence of defendant's guilt, there is simply no probability that the admission of the prejudicial evidence in the addendum to the PPO affected the outcome of these proceedings, so defendant is not entitled to a new trial on this claim of ineffective assistance. See *Trakhtenberg*, 493 Mich at 51.

Defendant next argues that defense counsel was ineffective for failing to challenge whether defendant had actual notice of the PPO. Defendant was charged with aggravated stalking, which "consists of the crime of 'stalking,' MCL 750.411h(1)(d), and the presence of an aggravating circumstance specified in MCL 750.411i(2)." *People v Threatt*, 254 Mich App 504, 505; 657 NW2d 819 (2002). The aggravating circumstances that were applied to defendant were MCL 750.411i(2)(a) and (c). MCL 750.411i(2)(a) and (c) state as follows:

> (2) An individual who engages in stalking is guilty of aggravated stalking if the violation involves any of the following circumstances:
>
> (a) At least 1 of the actions constituting the offense is in violation of a restraining order *and the individual has received actual notice of that restraining order* or at least 1 of the actions is in violation of an injunction or preliminary injunction.
>
> * * *
>
> (c) The course of conduct includes the making of 1 or more credible threats against the victim, a member of the victim's family, or another individual living in the same household as the victim. [Emphasis added.]

Thus, the prosecution was required to prove "actual notice" to convict defendant of aggravated stalking.

At the preliminary hearing, Deputy Matthew Doss testified that he personally served the PPO on defendant on April 1, 2015. Although Doss testified that he did not recall specifically

serving the PPO on defendant due to the number of PPOs he regularly served, he testified that he would not have written that he served defendant if he had not done so and verified defendant's identity. This evidence establishes that defendant was personally served with the PPO, and therefore establishes that he had actual notice. As this evidence was sufficient to establish that defendant was actually served with the PPO, defense counsel's failure to raise the issue at trial does not amount to ineffective assistance. See *People v Putman*, 309 Mich App 240, 245; 870 NW2d 593 (2015) (explaining that defense counsel's failure to raise a meritless objection did not deny defendant the effective assistance of counsel).

Defendant makes several unconvincing arguments on appeal. First, he argues that Officer Farrell's report states that, according to LIEN, the PPO was never served on defendant, which could have been used at trial to challenge the service of the PPO. But the PPO itself states that it was served and it was signed by Deputy Doss, and Deputy Doss's testimony corroborates this. Thus, even if defense counsel had raised the statement from Officer Farrell's report, there is no reasonable probability that it would have affected the outcome of the proceedings. *Trakhtenberg*, 493 Mich at 51.

Second, defendant relies on *Threatt*, 254 Mich App at 507, for the proposition that " 'actual notice' is not the equivalent of service," and requires evidence from which defendant's actual knowledge of the PPO could be inferred. Defendant is correct that actual notice does not mean service, but by establishing that the PPO was served on defendant, the prosecution established that defendant had actual notice. *Threatt* only recognized that service was not a requirement of actual notice; it did not recognize that actual notice was not satisfied by service.

Next, defendant argues that he was denied the effective assistance of counsel because counsel failed to object to the instances of prosecutorial misconduct already mentioned. As previously discussed, defendant has not sufficiently demonstrated that any of the alleged instances of prosecutorial misconduct resulted in plain error affecting his substantial rights. Nevertheless, "a failure to satisfy the plain-error test will not, without more, foreclose a defendant's claim of ineffective assistance of trial counsel." *People v Randolph*, 502 Mich 1, 5; 917 NW2d 249 (2018).

As already noted, the prosecutor's questioning of Officer Farrell involved questions about the investigation that led Officer Farrell to conclude that a crime had been committed and who perpetrated the crime. The content of Officer Farrell's testimony suggests that he was explaining the results of his investigation, not delivering a baseless opinion about defendant's guilt or innocence. The prosecutor did not commit misconduct by asking Officer Farrell about the steps of his investigation, see *Heft*, 299 Mich App at 83, and defense counsel cannot be ineffective for failing to raise a meritless objection, *Putman*, 309 Mich App at 245. And even if counsel was ineffective for not objecting, defendant cannot establish prejudice. See *Dobek*, 274 Mich App at 71 ("Given that [the investigating officer] was called as a witness by the prosecutor and that a criminal prosecution against [the] defendant was pursued, the jurors surely understood that [the investigating officer] believed that the victim was telling the truth even without the disputed testimony.").

Defendant next argues that defense counsel was ineffective for failing to object the prosecutor encouraging the jury to "please believe the officers of the Novi Police Department."

As already explained, the statement was made in response to defense counsel's closing argument, in which defense counsel also encouraged the jury to believe the Novi Police Department based on the lack of direct evidence discovered during Officer Farrell's investigation. Since the prosecutor's statement was made in response to an argument made by defense counsel, the prosecution did not commit misconduct, and defense counsel's failure to object was not ineffective assistance. *Putman*, 309 Mich App at 245.

Finally, defendant argues that defense counsel was ineffective for failing to object to the prosecutor's statement in her closing argument that a judge had already made a determination regarding the elements of aggravated stalking. However, as already explained, the prosecutor was not impermissibly shifting the burden of proof to defendant, but permissibly making arguments based on the evidence presented. Defendant does not dispute that the PPO was properly entered into evidence. We cannot conclude that defense counsel was ineffective for failing to raise a meritless objection to the prosecutor's arguments based on the PPO. *Id*. Accordingly, defendant was not denied the effective assistance of counsel.

## III. RIGHT OF CONFRONTATION

Defendant argues that the trial court denied him his right to confront the witnesses against him by refusing to allow him to impeach Hughey and Williams with evidence that Hughey had written a comment on a Facebook post regarding defendant and that Williams frequently watched a television show about stalking. We disagree.

The Confrontation Clause states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." US Const, Am VI. The Michigan Constitution also "afford[s] a criminal defendant the right to be confronted with the witnesses against him, [and] adopt[s] th[e] language of the federal Confrontation Clause verbatim . . . ." *People v Nunley*, 491 Mich 686, 697; 821 NW2d 642 (2012) (quotation marks and citation omitted). Although a defendant has a right to confrontation via the cross-examination of witnesses, a court—under MRE 611(a)—is required to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." *People v Willis*, 322 Mich App 579, 591; 914 NW2d 384 (2018), quoting MRE 611(a) (quotation marks omitted). The trial court is given "wide latitude to impose reasonable limits on cross-examination to ensure relevancy or because of concerns regarding such matters as harassment, prejudice, confusion of the issues, and repetitiveness." *People v Biddles*, 316 Mich App 148, 153; 896 NW2d 461 (2016).

Defendant contends that he was denied the right to confront the witnesses against him based on the trial court's refusal to allow him to introduce evidence of a comment made by Hughey on a Facebook post. Defendant argues that the Facebook comment supported his theory that Hughey lied about the events that led to his conviction out of jealousy because defendant was with another woman. The Facebook post that Hughey commented on was created by an unknown Facebook user. The Facebook user's name and photograph are not shown in the photocopy of the post that defense counsel sought to admit into evidence. The original Facebook post by the unknown user states: "God bless the one who said Yes . . . lol," and Hughey's

comment states: "this fool is getting married . . . After all the shit we went threw [sic] . . . lol[.]" The posting is dated "December 16," but does not have a year.

In general, "[l]imitation[s] on cross-examination that prevent[] a defendant from placing before the jury facts from which bias, prejudice, or lack of credibility of a prosecution witness might be inferred constitutes denial of the constitutional right of confrontation." *People v Gaines*, 306 Mich App 289, 316; 856 NW2d 222 (2014) (quotation marks and citation omitted). Based on the photocopy of the Facebook post here, we cannot infer any potential bias from Hughey against defendant. Hughey never mentions defendant by name or otherwise establishes that she is referring to defendant. Indeed, any context is severely lacking. It is unclear if the original post is from Hughey—in which case it suggests possible amusement, but certainly not jealousy—or whether it is from defendant, in which case Hughey's comment may suggest jealousy. Alternatively, the post could be from a third party, and Hughey's comment could be referring to her relationship with that third party, or Hughey's comment could be in response to a third party's post and could be referring to a relationship she had with a fourth party. And all of this is against the backdrop that we cannot determine *when* this exchange took place because the photocopy of the Facebook post has no year with its date. All said, with more information about the context of this Facebook post, it is possible that it suggests what defendant contends that it suggests. But, based on the information that defendant provided to the trial court and on appeal, that context is lacking. As it now stands, the post and comment—by themselves and lacking context—do not suggest that Hughey was jealous of, and therefore biased against, defendant. In short, defendant has not established that the Facebook post has any relevance to this case. Because a defendant does not have the right to cross-examination of irrelevant issues, *id*., defendant's right of confrontation was not denied by the trial court's decision to not admit the photocopy of the Facebook post.

Additionally, defendant argues that he was denied his right of confrontation when the trial court declined to allow defense counsel to question Williams about a television show that he frequently watched, which covered the topic of stalking. Defendant believes that the evidence was relevant for impeachment purposes because it would have shown that Williams was aware of the elements of the crime of aggravated stalking and used that knowledge to press false charges against defendant.

Evidence that Williams watched a television show that included the topic of stalking was only minimally relevant. Defense counsel did not proffer evidence to show that Williams knew the elements of the crime of stalking or that he could have gleaned the information needed to lie about a crime from the television show. Moreover, introduction of Williams's watching of a television show on stalking would have introduced issues that would likely have confused and mislead the jury because it would, as phrased by the prosecution, inject "extraneous considerations about the legal accuracy of the information provided by a cable television show." Additionally, watching a television show regarding the crime of stalking does not increase the likelihood that Williams lied about defendant's crime. As this Court has noted, "[t]he right of cross-examination is not without limit; neither the Confrontation Clause nor due process confers an unlimited right to . . . cross-examine on any subject." *People v Adamski*, 198 Mich App 133, 138; 497 NW2d 546 (1993). "Cross-examination may be denied with respect to collateral matters bearing only on general credibility, as well as on irrelevant issues." *People v Canter*, 197 Mich App 550, 564; 496 NW2d 336 (1992). Accordingly, because the evidence that

-11-

Williams watched a television show on stalking is not relevant to whether Williams would lie about the charges against defendant, the trial court properly denied defendant's request to use that evidence to impeach Williams.

     Affirmed.

                           /s/ Elizabeth L. Gleicher
                           /s/ Cynthia Diane Stephens
                           /s/ Colleen A. O'Brien